Williams Law Firm, P.C.
Nicholas J. Pagnotta
Alexander T. Tsomaya
235 E. Pine, P.O. Box 9440
Missoula, Montana 59807-9440
(406) 721-4350
nick@wmslaw.com
alex@wmslaw.com
wlfmail@wmslaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT,
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>-vs-<br><br>K&E ENTERPRISES, INC., and KENNETH KESTERSON, III,<br><br>Defendants. | CV-25-20-BU-JTJ<br><br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Acuity, a Mutual Insurance Company (Acuity), for its Complaint for Declaratory Relief, states and alleges as follows:

1.    This declaratory judgment action considers whether liability coverage is available to K&E Enterprises, Inc., under a commercial policy with underlying and excess parts. At issue is an underlying state court action stemming from

1

consolidated plaintiff-homeowners' complaints regarding homes they purchased in the Three Forks area.

2.     The underlying plaintiff-homeowners own ten homes. They sued the "developer-vendor" and the general contractor for each home. K&E Enterprises was the vendor-seller for two of the ten homes.

3.     Acuity is defending K&E Enterprises under a reservation of rights in the underlying action pending this declaratory judgment action. Acuity seeks a declaration that there is no duty to defend and, consequently, no duty to indemnify K&E Enterprises for the underlying action. Kenneth Kesterson, III, is a named defendant in his role for K&E Enterprises, so that the same analysis governs him.

## I.    JURISDICTION AND VENUE

4.     The Court has jurisdiction under 28 U.S.C. § 1332(a). There is diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Additionally, venue is appropriate in this Division, and a real case or controversy presents itself to the Court.

### A.    There is complete diversity.

5.     Acuity is a corporation and incorporated in and has its principal place of business in Wisconsin. *See* 28 U.S.C. § 1332(c); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

6.      K&E Enterprises was a corporation incorporated and domiciled in Montana. Accordingly, it is a citizen of Montana.

7.      Kenneth Kesterson, III, is a natural person and Montana citizen.

8.      There is complete diversity among the parties as they are citizens of different states.

**B.    The amount in controversy exceeds $75,000.**

9.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 347 (1977).

11.     At issue is policy number ZB9017. It has both underlying general liability and umbrella coverage with the Bis-Pak Coverage Part and the Commercial Excess Liability Coverage Part.

12.     The underlying action asserts that a number of homes in a new subdivision suffered from significant construction defects and were rendered partially uninhabitable. The claims, in conjunction with the policy, show that over $75,000 is at issue.

13.    Additionally, whether the duty to defend is at issue, the amount in controversy includes the cost of defending the underlying case. *See Okada v. MGIC Indem. Corp.*, 795 F.2d 1450, 1453 n. 1 (9th Cir. 1986). Here, Acuity is defending K& Enterprises and Mr. Kesterson, so the cost of defense further shows the amount in controversy is fulfilled considering this expense to Acuity.

14.    The amount in controversy exceeds $75,000.

### C.    Venue is appropriate in this Division.

15.    Venue is appropriate in the District of Montana because "a substantial part of the events or omissions giving rise to the claim occurred" in Gallatin County, Montana. 28 U.S.C. § 1391(b)(2).

16.    Divisional "venue is proper in any division of [this District] containing a county of proper venue under the laws of the State of Montana." L.R. 3.2(b). Venue is appropriate in Gallatin County under state law because that is where the underlying case seeks a judgment. *See* Mont. Code Ann. § 25-2-121(2)(c) (providing several venue options in cases with "contracts of indemnity or insurance"). Gallatin County is in the Butte Division, so venue is proper in the Butte Division of the District of Montana.

### D.    A real case or controversy exists.

17.    There is a real case or controversy.

18.     Acuity is defending K&E Enterprises and Mr. Kesterson under a reservation of rights and subject to the Court's ruling(s) in this case. *See Horace Mann Ins. Co. v. Hanke*, 312 P.3d 429, 436 (Mont. 2013) ("An insurer in the normal course of coverage may elect to fulfill its duty to defend by providing coverage to an insured and later contesting the boundaries of that coverage in a declaratory judgment action.").

19.     The Court has the authority to issue the requested declaratory judgment pursuant to 28 U.S.C. § 2201(a). *See also Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (observing there is a "case or controversy" for an insurer's "declaratory judgment action to establish whether it ha[s] a duty to defend and to indemnity"); *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Circ. 1992) (similar).

## II.     BACKGROUND

### A.     Acuity's policy language.

20.     K&E Enterprises purchased policy ZB9017 from Acuity. It includes general liability and umbrella coverage, among other non-pertinent forms for this case. Relevant here are the "Bis-Pak Coverage Part" and "Commercial Excess Liability Coverage Part".

21.     This policy commenced on January 1, 2019, and was cancelled on November 15, 2021. A .PDF copy of the policy period for the 2020 to 2021 period is attached as **Exhibit 1**.

*1. Bis-Park Coverage Part.*

22.     The first coverage part, "Bis-Pak Coverage Part" (Bis-Pak). It provides underlying coverage. The named insured is:

> K&E ENTERPRISES INC
> DBA SUNRISE MONTANA BUILDERS
> PO BOX 795
> MANHATTAN MT 59741

23.     Liability coverages and classifications are as follows:

**LIABILITY COVERAGES PROVIDED**

| Coverage Item | Limit of Insurance |
|---|---|
| Liability and Medical Expenses (Each Occurrence) | $1,000,000 |
| Medical Expenses (Any One Person) | $10,000 |
| Damage to Premises Rented to You | $250,000 |
| Products-Completed Operations Aggregate Limit | $3,000,000 |
| General Aggregate Limit (Other Than Products-Completed Operations) | $3,000,000 |

**SCHEDULE OF LIABILITY CLASSIFICATION**

| Premises Number | Building Number | Classification Description | Class Code | Premium Basis[1] | | Rate |
|---|---|---|---|---|---|---|
| 001 | 001 | Carpentry - Residential, Not Exceeding Three Stories | 91340 | If Any | PA | 33.21 |
| 001 | 001 | Contractors-Subcontracted Work | 91585 | $15,000 | TC | 4.11 |
| 001 | 001 | Excavation | 94007 | $200,000 | PA | 43.26 |
| 001 | 001 | Carpentry - Interior | 91341 | $46,760 | PA | 23.28 |

*Id.* at 2–3. No additional insured is listed.

24.     The form providing liability coverage is called: "Bis-Pak® Business Liability and Medical Expenses Form." (Caps removed) ("Underlying Form"). It has an index that functions as a table of contents. The beginning of the Underlying Form instructs the reader to read the entire policy and that the policy contains restrictions. It also states, in part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

25.     The Underlying Form provides that stockholders are insureds, stating, in part:

> Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Exhibit 1, Underlying Form, at 11.

26.     Starting with the coverage grant section of the Underlying Form, it states:

**LIABILITY AND MEDICAL EXPENSES COVERAGES**

**1. Business Liability**
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury*, *property damage* or *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury*, *property damage* or *personal and advertising injury* to which this insurance does

not apply. We may at our discretion investigate any *occurrence* or any offense and settle any claim or *suit* that may result. But:

(1) The amount we will pay for damages is limited as described in the Liability and Medical Expenses Limits of Insurance Section; and

(2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

**b.** This insurance applies:

(1) To *bodily injury* or *property damage* only if:

(a) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the coverage *territory*; and

(b) The *bodily injury* or *property damage* occurs during the policy period.

(c) Prior to the policy period, no insured listed under item 1 of Who Is An Insured and no *employee* authorized by you to give or receive notice of an *occurrence* or claim, knew that the *bodily injury* or *property damage* had occurred, in whole or in part. If such a listed insured or authorized *employee* knew, prior to the policy period, that the *bodily injury* or *property damage* occurred, then any continuation, change or resumption of such *bodily injury* or *property damage* during or after the policy period will be deemed to have been known before the policy period.

(2) To *personal and advertising injury* caused by an offense arising out of your business, but only if the offense was committed in the *coverage territory* during the policy period.

\*\*\*\*

*Id*. at 2.

27.    The Underlying Form has various exclusions, including:

## EXCLUSIONS

**1. Applicable to Business Liability Coverage This Insurance does not apply to:**

\*\*\*\*

**k.**    Damage to Property
*Property damage* to:

   \*\*\*\*

   (2) Premises you sell, give away or abandon, if the *property damage* arises out of any part of those premises;

   \*\*\*\*

   (5) That particular part of real property on which you or any contractor or sub-contractor working directly or indirectly on your behalf is performing operations, if the *property damage* arises out of those operations; or

   (6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to *property damage* (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To

Premises Rented To You as described in paragraph 3 under the Liability And Medical Expenses Limits Of Insurance Section.

Paragraph (2) of this exclusion does not apply if the premises are *your work* and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement. Paragraph (6) of this exclusion does not apply to *property damage* included in the *products-completed operations hazard*.

\*\*\*\*

*Id*., at 4–9.

28.    The italicized words are defined, including the below:

**3.** "*Bodily injury*" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.[2]

\*\*\*\*

**13.** "*Occurrence*" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "*Personal and advertising injury*" means injury, including consequential *bodily injury*, arising out of one or more of the following offenses:
    **a.** False arrest, detention or imprisonment;
    **b.** Malicious prosecution;
    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;
    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
    **f.** The use of another's advertising idea in your *advertisement*; or

**g.** Infringing upon another's copyright, trade dress or slogan in your *advertisement*.

\*\*\*\*

**16.** "*Products-completed operations hazard*":

  **a.** Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

  (1) Products that are still in your physical possession; or
  (2) Work that has not yet been completed or abandoned. However, your work will be deemed completed at the earliest of the following times:

  (a) When all of the work called for in your contract has been completed.
  (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
  (c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  The *bodily injury* or *property damage* must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of your product for consumption on premises you own or rent.

  **b.** Does not include *bodily injury* or *property damage* arising out of:
  (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured; or
  (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

11

**17.** "*Property damage*" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\*\*\*\*

**22.** "*Your work*" means:
**a.** Work or operations performed by you or on your behalf; and
**b.** Materials, parts or equipment furnished in connection with such work or operations.
*Your work* includes:
**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and
**b.** The providing of or failure to provide warnings or instructions.

*Id*. at 14–17

    29.    Lastly, note that the Underlying Form contains language as to the limits available. *See id.* at 12–13.

*2. Commercial Excess Liability Coverage Part.*

30.    The second coverage part at issue is called "Commercial Excess

Liability Coverage Part" (Excess Part). It too includes the following named

insured:

First Named Insured and Address:

K & E ENTERPRISES INC
DBA SUNRISE MONTANA BUILDERS
PO BOX 795
MANHATTAN MT 59741

*Id.* at Declarations. There are no other named insureds, confirmed by the listing of

"NONE" on that line. *Id.* The Excess Part has the following limits that apply:

| LIMITS OF INSURANCE | |
| --- | --- |
| General Aggregate | $1,000,000 |
| Products-Completed Operations Aggregate | $1,000,000 |
| Each Occurrence | $1,000,000 |

*Id.* It also lists a scheduling of underlying insurance, which includes the coverage

part described above and other parts that are not relevant to this matter. *See id.*

31.    The Excess Part provides the following coverage terms:

## SECTION I - COVERAGES

### 1. Insuring Agreement

**a.** We will pay those sums, in excess of the amount payable under
the terms of any *underlying insurance*, that the insured becomes
legally obligated to pay as damages because of *injury* or damage to
which this insurance applies, provided that the *underlying insurance*

13

also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

We will also pay those sums that the insured becomes legally obligated to pay as damages because of *injury* or damage to which the insurance provided under the Coverage Extension applies as set forth in paragraph 4 below.

**b.** We have the right to participate in the investigation or settlement of claims or the defense of the insured against suits seeking damages because of *injury* or damage to which this insurance may apply. We have a duty to investigate or settle such claims or to defend the insured against such suits when the applicable Limit of Insurance of the *underlying insurance* has been used up by payment of judgments, settlements and any cost or expense subject to such limit.

We will have the right and duty to participate in the investigation and settlement of claims or the defense of the insured against suits seeking damages because of *injury* or damage to which the insurance provided under the Coverage Extension may apply.

This right or duty to defend is limited as set forth in paragraph 3 below.

However, we will have no duty to defend the insured against any suit seeking damages for injury or damage to which this insurance does not apply.

**c.** The amount we will pay for damages is limited as described in Section II - Limit of Insurance.

**d.** This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the *underlying insurance*, except:

(1) We have no obligation under this insurance with respect to any claim or suit that is settled without our consent; and

14

(2) With respect to any provisions to the contrary contained in this insurance.

****

Exhibit 1, Excess Part, at 2; *see also* § 3. "Investigation or Settlement of Claims or Defense of Insured Against Suits" (bold removed).

32.    The same exclusions apply from the Underlying Form apply to the Excess Part (in addition to its separate exclusions):

**2. Exclusions**

The exclusions that apply to the *underlying insurance* apply to this insurance. Also, this insurance does not apply to damages because of:

****

Ex. 1, at 2.

33.    This Excess Part also contains definitions and limits. It defines the italicized words. *See generally id.*

34.    The Excess Part contains language pertaining to the Limit of Insurance. *Id.* at 4–5.

35.    The Excess Part "is subject to the same terms, conditions, agreements, exclusions and definitions as the *underlying insurance*," which here is the Underlying Part.

15

### B.    The conduct alleged in the underlying action.

36.    The underlying state court action, titled *Dempsey et.al., v. KIII*

*Construction, LLC et al.,* Cause No. DV-16-2024-585-BC, is pending in the

Montana Eighteenth Judicial District Court, Gallatin County. **Exhibit 2**, Amend.

Compl. and Demand for Jury Trial, DV-16-2024-585-DC (Sept. 10, 2024).

37.    The underlying plaintiffs are homeowners that purchased homes in

Three Forks, Montana. The underlying action involves the following parties, with

the bolded being defendants in this case:

| Plaintiff Homeowners | Construction Defendants |
|---|---|
| <ul><li>David and Laken Dempsey</li><li>Sherry, Ashley and Joshua Johnson</li><li>Nicole C. King, as Trustee of the Nicole Christell King Revocable Living Trust</li><li>Shaine and Brecken Perry</li><li>Garry Lee Tye, Jr., and Tiffany Ward</li><li>Alisce Whitelaw and Tracy Blashill</li><li>Ian and Samantha Daubenspeck</li><li>Jeffrey and Rhonda Edwards</li><li>Paul and Sharon Finlayson, as Trustees of the Paul M. and Sharron K. Finlayson Revocable Living Trusts</li><li>Kevin and Michell King</li></ul> | <ul><li>KIII Construction, LLC (general contractor for the homes)</li><li>Kesterson Properties, LLC (developer-vendor for certain homes)</li><li>**K&E Enterprises, Inc.** (developer-vendor for certain homes) [named insured]</li><li>**Kenneth Kesterson, III** (sole member of K III Construction, one of the members of Kesterson Properties, and shareholder of K&E Enterprises)</li></ul> |

38.     The underlying action alleges that K&E Enterprises was involved in only two of the homes at issue: (1) the Whitelaw/Blashill home; and (2) the Edwards home. Both homes were purchased in 2019, though damages are alleged to have taken place years later. The other homes involve separate defendants not presently at issue. The two homes relevant to this case are discussed below.

The Whitelaw/Blashill home

39.     The first home is the Whitelaw/Blashill home.

40.     KIII Construction was the general contractor for this home. Ex. 2 at. ¶ 81. Ms. Whitelaw executed a buy-sell with K&E Enterprises to buy this home on March 11, 2019. *Id.* ¶ 82.

41.     The plaintiffs allege that the foundation of the home was not constructed in a workmanlike manner. *Id.* ¶ 83. They allege that was an adverse material fact that should have been disclosed to them but was not. *Id.* The plaintiffs allege foundation issues were not disclosed and closing otherwise would not have happened. *Id.* ¶¶ 83–84.

42.     Ms. Blashill became a co-owner in the home subsequently. *Id.* ¶ 85.

43.      In September 2022, the plaintiffs allege they noticed ceiling and drywall cracks in the home that ran from the living room towards the master bedroom. *Id.* ¶ 86.

44.    In May 2023, water pooling was observed in the area of the front porch. *Id.* ¶ 87. Shortly after that, the owners alleged, concrete cracking was observed within the driveway and garage. *Id.* Cracks progressed down the hallway at the same time. *Id.* "Significant" gaps were then observed at multiple locations within the home. *Id.*

45.    These homeowners allege their home has defects, needs repairs, and they will suffer loss of use. *Id.* ¶¶ 88–90. They allege that the home has substantial, material defects. *Id.*

<u>The Edwards Home</u>

46.    The other home involving K&E Enterprises is the Edwards' home.

47.    KIII Construction was the general contractor of this home, too. *Id.* ¶ 104. The Edwards entered into a buy-sell arrangement with K&E Enterprises on July 30, 2019. *Id.* ¶ 105.

48.    Nancy Clark represented K&E Enterprises as the seller's agent and provided an AmeriMont Form that, like with the other homeowners in the case, failed to disclose any adverse material facts. *Id.* ¶¶ 106–08.

49.    Yet the Edwards allege that they would not have closed otherwise if they were "made aware that the foundation … was not constructed in a workmanlike manner." *Id.* ¶¶ 109–11. Not having that knowledge, the Edwards closed on the house on November 26, 2019. *Id.*

50.    They contend that they would not have closed on the home had the foundation issues been disclosed to them. *Id.* ¶ 111.

51.    The Edwards allege noticing cracking in drywall in 2022. *Id.* ¶ 112. Mr. Kesterson placed shims in the crawlspace and told them that "he would give it a few months and return." *Id.*

52.    By May 2023, the Edwards noticed extensive cracking. *Id.* ¶ 113. They allege that Kenny Kesterson said he would initially fix the issues but then "told the Edwards they should address the issues themselves." *Id.*

53.    The Edwards also claim the home suffers defects, needs repairs, and they will suffer loss of use. *Id.* ¶¶ 114–16.

## III.    DECLARATORY JUDGMENT

54.    The underling lawsuit does not qualify for liability coverage under either party of the policy.

55.    With respect to an initial coverage grant under the coverage parts, the underlying action does not allege "bodily injury" or "personal and advertising injury" as those terms are defined.

56.    While the underlying action alleges damage to homes that may be "property damage," there is no coverage for any damage to the homes that happened outside of a policy period. This is under the definition of "occurrence" and policy language requiring that such damage occurs during the policy period.

57.     Here, both sets of homeowners allege their homes sustained damages in 2022 and 2023. This policy, however, was cancelled in 2021. Under Montana's actual injury rule that applies with this policy language, there accordingly is no coverage grant and no liability coverage.

58.     As such, K&E Enterprises and Mr. Kesterson cannot show that there is a coverage grant.

59.     Although they cannot establish a coverage grant in the first instance, exclusions also preclude coverage.

60.     Exclusion k.(2), known as the "alienated premises exclusion," precludes coverage.

61.     It precludes coverage for "premises you sell, give away or abandon, if the property damage arises out of any part of those premises." That language precludes coverage from these homes.

62.     The exception to the exclusion does not apply because the homes are not "your work" as that term is defined. K&E Enterprises sold the home but did not perform work.

63.     Alternatively, if the homes are "your work," other exclusions then preclude coverage.

64.     More specifically, Exclusions k.(5) and (6) would, in that situation, preclude coverage.

65.     Both are in what is known as the "business risk" exclusion. It

provides, in relevant part, that there is no coverage for:

> (5) That particular part of real property on which you or any contractor
> or sub-contractor working directly or indirectly on your behalf is
> performing operations, if the property damage arises out of those
> operations; or
>
> (6) That particular part of any property that must be restored, repaired
> or replaced because your work was incorrectly performed on it.

66.     In the event that it is determined that K&E Enterprises' "work"

contributed to construction or that K&E Enterprises has "operations," then these

two exclusions preclude coverage.

67.     Other provisions and/or exclusions in the policy may either not

provide or otherwise preclude coverage.

68.     If the underlying action at any point seeks punitive damages, the

policy does not provide that coverage.

69.     There is no duty to defend because (1) the underlying case's

allegations do not fall within a coverage grant under the policy as they do not

account for an occurrence and (2) the allegations fall withing the policy's

exclusions.

70.     There is no coverage when comparing the underlying case to the

policy's language.

71.     Because there is no duty to defend, there can be no duty to indemnify.

72.    Nor is there a duty to indemnify due to the damages sought.

## REQUEST FOR RELIEF

Acuity requests the following relief:

1.    The Court declare there is no coverage under the policies for any and all claims in the underlying case, and, therefore, Acuity owes no duty to defend or indemnity K&E Enterprises.

2.    Acuity should be awarded its costs.

3.    The Court grant any additional or supplemental relief which it deems necessary.

DATED this <u>10th</u> day of <u>February</u>, 2025.


*/s/ Alexander T. Tsomaya*
Nicholas J. Pagnotta
Alexander T. Tsomaya
*Attorneys for Plaintiff*